1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JACK TU,<br><br>              Plaintiff,<br><br>              v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner of Operations, performing duties and functions not reserved to the Commissioner of Social Security,<br><br>              Defendant. | Case No. SA CV 17-00780-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Jack Tu ("Plaintiff") appeals from the Social Security Commissioner's final decision denying his application for Social Security Disability Insurance Benefits ("DIB"). For the reasons discussed below, the Commissioner's decision is affirmed and this matter is dismissed with prejudice.

**I.**

**BACKGROUND**

Plaintiff filed an application for DIB in 2013, alleging disability beginning August 31, 2011. See Administrative Record ("AR") 76, 156-59.

After his application was denied, see AR 95-99, 101-09, he requested a hearing before an administrative law judge ("ALJ"), see AR 110-11. Plaintiff's hearing took place on July 27, 2015. See AR 36-62. The ALJ heard testimony by a vocational expert and Plaintiff, who was represented by counsel. See id.

In a written decision issued August 25, 2015, the ALJ denied Plaintiff's claim for benefits. See AR 12-35. He found that Plaintiff had severe impairments of major depressive disorder, anxiety disorder, insomnia, mild to moderate right ulnar nerve entrapment of the right elbow, mild left ulnar nerve entrapment at the left elbow, mild bilateral L5 radiculopathy, chronic sprain of the bilateral shoulders, and myofascial pain of the cervical and thoracolumbar spine. See AR 17. The ALJ determined that the severe impairments did not meet or medically equal the severity of a listed impairment. See AR 18-19. He found that despite those impairments, Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following restrictions: lift or carry 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for 6 hours out of an 8-hour workday with normal breaks; occasionally handle and finger bilaterally; frequently push and pull and perform overhead work bilaterally; occasionally perform postural activities, but no climbing ladders, ropes, or scaffolds or crawling; avoid heights and dangerous machinery; and be limited to simple tasks and simple work related decisions with no inherently stressful work, such as taking complaints. See AR 17-28. Based on the RFC, the ALJ found that Plaintiff could not perform his past relevant work as an auto mechanic, but could perform other work as a restaurant host and an information clerk. See AR 28-30. Thus, he determined that Plaintiff was not disabled during the relevant period. See AR 30.

After the Appeals Council denied review of the ALJ's decision, see AR 1-7, the ALJ's August 2015 decision became the final decision of the Commissioner. This action followed. See Dkt. 1.

///
///

## II.

## DISCUSSION

The parties dispute whether: (1) the ALJ improperly rejected the limitations stated by his treating psychologist and neurologist; (2) the ALJ improperly rejected Plaintiff's subjective symptom testimony; (3) the ALJ erred in questioning the VE; and (4) remand is appropriate so that the ALJ can consider new evidence added to the record by the Appeals Council. See Dkt. 20, Joint Stipulation ("JS").

**A.     Treating Physician Opinions**

    **1.     Applicable Law**

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. § 404.1527(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended Apr. 9, 1996).[1] A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a nonexamining physician. See Lester, 81 F.3d at 830. When a treating physician's opinion is uncontroverted by another doctor, it may be rejected

---

[1] Social Security Regulations regarding the evaluation of opinion evidence were amended effective March 27, 2017. Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 804 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final."). Accordingly, the Court applies the version of 20 C.F.R. § 404.1527 that was in effect at the time of the ALJ's August 2015 decision.

only for "clear and convincing reasons." See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). Where such an opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citation omitted). Moreover, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other things. See 20 C.F.R. § 404.1527(c)(2)-(6).

**2. Analysis**

    a. Dr. Flores

Nelson J. Flores, Ph.D., began treating Plaintiff in February 2012 for depression and anxiety for purposes of a worker's compensation claim.[2] See AR 292. On December 9, 2013, Dr. Flores completed a questionnaire in which he concluded that Plaintiff would be absent from work more than 3 times a month. See AR 194. Dr. Flores also indicated that Plaintiff had marked limitations in the ability to understand, remember, carry out detailed instructions, and to be punctual and maintain regular attendance. See AR 198. On July 16, 2015, Dr. Flores completed an assessment based on his treatment of Plaintiff 2 to 4 times per month from February 2012 through June 2015. See AR 801-03. He checked a box indicating that Plaintiff had "marked"

---

[2] Plaintiff was terminated from his job on August 31, 2011 (the same day he alleges the beginning of his disability) for leaving a glass of coke in a customer's car. See AR 298.

4

limitations for remembering locations and work-like procedures, understanding and remembering detailed instructions, carrying out detailed instructions, performing activities within a schedule and being punctual, accepting instructions and responding to criticism from supervisors, and responding appropriately to workplace changes. See AR 802. He also opined that Plaintiff would miss work more than 3 times a month. See AR 803.

The ALJ gave little weight to Dr. Flores's opinions because "[t]he severity of several of the limitations assessed by Dr. Flores are inconsistent with the claimant's treating records." AR 27. The ALJ gave great weight to State agency medical consultants, who opined that Plaintiff only suffered from moderate limitations in his ability to respond appropriately to changes in work setting. See AR 26 (citing AR 77-91). The ALJ also gave great weight to the opinion of a consulting psychiatrist who examined Plaintiff in November 2013 and opined that he was not limited in his ability to follow simple or detailed instructions, that his ability to respond to changes in a work setting was mildly limited, and that his ability to respond to work pressure was moderately limited. See AR 27 (citing AR 471-77).

Substantial evidence supports the ALJ's finding that Dr. Flores's treatment records do not support the severity of the limitations he assessed. For instance, Dr. Flores noted in his November 2014 progress report that Plaintiff reported improved mood with treatment, improved sleep with medication, and that his current emotional condition remained stable with medication. See AR 682. After receiving outpatient therapy and medication, Plaintiff reported improvements in his mood, sleep, and other symptoms on many occasions. See AR 287, 289, 553. Moreover, none of Dr. Flores's treatment notes provide any support for the limitations contained in either of his opinions. While Plaintiff cites to records reflecting a sad and anxious mood, body tension, and a tired appearance, see JS at 8 (citing numerous portions of the AR), none of

5

these observations would support, for example, Dr. Flores's opinion that Plaintiff would miss more than three days of work per month. Thus, the ALJ did not err in giving little weight to Dr. Flores's opinion. See Thomas, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that "incongruity" between treating physician's opinion on patient's limitations and patient's medical records is "specific and legitimate reason" for discounting that opinion).

b. Dr. Ali

Neurologist Mumtaz A. Ali, M.D., began treating Plaintiff in November 2012. See AR 442. On December 18, 2013, Dr. Ali summarized his findings in responses to an upper extremities impairment questionnaire. See AR 212-17. Dr. Ali opined that Plaintiff could occasionally lift and carry items between 10 and 20 pounds but never over 20 pounds. See AR 215. Dr. Ali also opined that Plaintiff had moderate limitations in grasping, turning, twisting, objects with his hands, fine manipulation, and reaching. See AR 217. Dr. Ali stated that Plaintiff would need to take 10-15 minute breaks every 2 hours, and he would need to miss work more than 3 times a month. See id. He also opined that Plaintiff could not push or pull. See id.

Dr. Ali completed a separate narrative report on January 7, 2014. See AR 504-09. In that report, Dr. Ali concluded that Plaintiff had more severe limitations. He opined that Plaintiff could lift and carry only 10 pounds and only on an infrequent basis; Plaintiff's ability to sit, stand, walk, climb, balance, push, pull, use his feet for repetitive movements were moderately impaired; and his ability to perform work at a consistent pace for 8 hours, work without needing more than one 5-minute break per hour, complete a normal work day and maintain regular attendance, and perform simple gripping and

6

grasping activities were severely impaired. See AR 508-09.

The ALJ gave little weight to Dr. Ali's opinion, noting that Dr. Ali's "clinical findings are consistent with a conclusion that [Plaintiff] could do work with the limitations noted herein." AR 28. The ALJ also noted that Dr. Ali examined Plaintiff solely in the context of a worker's compensation claim, a fact that ALJ cited as "affect[ing] the credibility and relevance of their opinions." Id.

The latter basis is not a specific and legitimate reason for discounting Dr. Ali's findings. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1200 n.5 (9th Cir. 2004) (rejecting plaintiff's contention that doctor hired by workers' compensation insurance company may have been biased in evaluation); see also Heun-Davidson v. Berryhill, No. 16-1569, 2017 WL 5054657, at *6 (C.D. Cal. Nov. 1, 2017) (noting that ALJs may not disregard medical opinions simply because they were elicited in workers' compensation proceeding). But any error was harmless, because the other reason offered by the ALJ sufficiently supports the ALJ's finding. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) ("We have long recognized that harmless error principles apply in the Social Security Act context.").

Substantial evidence supported the ALJ's conclusion that Dr. Ali's clinical findings were consistent with the RFC found by the ALJ. In late 2014 and early 2015, Dr. Ali consistently reported that Plaintiff's medications were helping him considerably, decreasing his pain and allowing him to perform activities of daily living with greater ease. See, e.g., AR 712, 716, 718, 722. Dr. Ali also consistently found only slight-to-moderate limitations in Plaintiff's various ranges of motion. See, e.g., AR 712, 716, 718, 722. These findings are not consistent with the severe limitations contained in Dr. Ali's earlier opinion. Thus, the ALJ did not err in discounting Dr. Ali's opinion.

7

**B.     Subjective Symptom Testimony**

   **1.     Applicable Law**

The court engages in a two-step analysis to review the ALJ's evaluation of the plaintiff's symptom testimony. See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the plaintiff has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. See id. If the plaintiff meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting the plaintiff's complaints. See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the [plaintiff's] complaints." Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as amended) (citation omitted). The ALJ may consider, among other factors, a plaintiff's reputation for truthfulness, inconsistencies in his testimony, inadequately explained failures to seek treatment or to follow a prescribed course of treatment, his work record, and his daily activities. See Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (as amended); Smolen v. Chater, 80 F.3d 1273, 1283-84, 1284 n.8 (9th Cir. 1996). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second[ ]guessing." Thomas, 278 F.3d at 959.

   **2.     Analysis**

At his hearing, Plaintiff testified that he could only stand for 10-15 minutes before sitting down and could only sit for 20 minutes before changing positions. See AR 44. He could walk around the neighborhood. See id. Some

days, he had trouble lifting a gallon of milk. See id. He sometimes took a long time to move his bowels, and he had a hard time dressing and numbness in and pain in his hands most of the day. See AR 45. In the morning, he performs light exercises, has breakfast, takes medicine, helps sweep the floor, and lays down and naps in the daytime. See AR 45-46. In the afternoon, after lunch, he walks around the house for exercise and helps his wife with light household chores. See AR 46. He can drive to and from his doctors' offices. See id. He cannot work because he feels tired, gets short of breath, feels pain in his back and legs, and cannot lift anything without pain. See id. Pain and numbness in his legs restricts his walking to 15-20 minutes. See AR 49. He lays down for between an hour and a half and two hours a day. See AR 50-51. He has headaches two or three times a week that last 20 minutes, although they've increased in frequency. See AR 51-52. He can use his hands for half an hour before needing a 10 minute break, but could not sustain this beyond two 30-minute sessions. See AR 52-53. He feels isolated; feels two or three times a week like he does not want to talk to anybody all day; and has problems sleeping. See AR 53-54. He cannot read his daughter's sixth-grade homework because he cannot focus on it. See AR 55. He used to go out but now wants to lock himself in a room. See id. He sleeps four to five hours without medication and six to seven hours a night with medication and is woken up by back pain. See id.

The ALJ gave specific, clear and convincing reasons for discrediting Plaintiff's testimony regarding his physical and mental impairments.

First, the ALJ reasoned that Plaintiff's alleged limitations were greater than expected in light of the objective evidence of record. See AR 21. At a February 2012 mental status examination, Plaintiff had normal speech, appropriate thought content and process, and average intellectual functioning. See AR 21, citing AR 292-309. A March 2012 MRI of the lumbar spine

reflected unremarkable findings. See AR 21, citing AR 760. A November 2012 report showed electrophysiological evidence of only mild bilateral radiculopathy and mild to moderate nerve entrapment at the elbows. See AR 21, citing AR 430. A November 2012 MRI revealed only mild degenerative disc dehiscence. See AR 21-22, citing AR 283. November 2013 and March 2014 mental status examinations reflected normal thought process, memory, concentration, and judgment. See AR 21, citing AR 471-75, 593-94. A November 2013 physical revealed a negative straight leg test, normal range of motion of the shoulders, elbows, wrists, hips, knees, and ankles, full motor strength, normal reflexes, and normal gait. See AR 22, citing AR 326-31. Physicals in 2014 showed trigger points and decreased sensation in the hands, but Plaintiff had only slightly to moderately restricted range of motion at the shoulders, spine, and hips. See AR 22, citing AR 722-45. November 2014 and March 2015 physical examinations revealed normal findings. See AR 22, citing AR 676-77.

Second, the ALJ reasoned that Plaintiff's activities of daily living, while limited, were inconsistent with Plaintiff's testimony about his more extreme limitations. See AR 21. The ALJ noted that Plaintiff could perform personal grooming activities, prepare meals, perform household chores, drive a vehicle, and perform exercises. See id., citing hearing testimony and AR 181-88 (September 2013 function report completed by Plaintiff). Performing light exercises and household chores and occasionally driving is not inconsistent with Plaintiff's alleged functional limitations, such as difficulty with concentration or sustained sitting, walking, and standing. The error was harmless, however, because the ALJ gave other sufficient reasons for discounting Plaintiff's testimony.

Third, the ALJ reasoned that Plaintiff's medical records reflected conservative, effective treatment. AR 21-22. The Court agrees, and this

provides a second clear and convincing reason to discount Plaintiff's subjective symptom testimony. In April and June 2012, Plaintiff reported improvement in his sleep and mood symptoms with therapy and medication. See AR 21, citing AR 287. On May 19, 2014, Plaintiff reported improved mood, motivation, and positive thinking with treatment. See AR 21 citing AR 597. Plaintiff reported appreciable back pain relief with trigger point injections and medication between November 2012 and November 2013. See AR 21, citing, e.g., AR 369-71, 395. Plaintiff reported decreased neck tension and increased range of motion with chiropractic treatment in April 2013. See AR 22, citing AR 408. In October 2014, Plaintiff reported 20-50% improvement in his ability to walk, sit, socialize, bend, bathe, cook and lift with medication; in November 2014 and April 2015, he reported over 50-80% improvement. See AR 22, citing AR 725, 712-22. At that time, Plaintiff's pain level was a 2-3 out of 10 with medication, which allowed him to perform daily activities with greater ease. See id.

**C.      Hypothetical Posed to VE**

At step three of the sequential evaluation, the ALJ concluded that Plaintiff had moderate difficulties with concentration, persistence, or pace, as also opined by the State agency medical consultants. See AR 18 (citing AR 77-91).

In the first hypothetical posed to the VE, the ALJ included the limitation to "simple tasks, simple work-related decisions with no inherently stressful jobs such as taking complaints." AR 57. The VE responded with the jobs of restaurant host and information clerk. See AR 58. The ALJ added several other assumptions, none of which are relevant to the issue posed by Plaintiff, and none of which referenced difficulties in concentration, persistence, or pace. See AR 58-60.

Plaintiff argues that the ALJ should have included in the hypothetical

11

Plaintiff's moderate limitations in concentration, persistence, and pace in a work environment. See JS at 37-38. Plaintiff cites Brink v. Comm'r of Soc. Sec. Admin., 343 Fed. Appx. 211 (9th Cir. 2009), for support. See id. In Brink, the Ninth Circuit held in an unpublished opinion that an ALJ erred in posing a hypothetical to the VE that referenced only "simple, repetitive work," where the ALJ had accepted medical evidence that Brink had moderate difficulty maintaining concentration, persistence, or pace. See Brink, 343 Fed. App'x at *1; see also Lubin v. Comm'r of Soc. Sec. Admin., 507 F. App'x 709, 712 (9th Cir. 2013) (citing Brink and noting that "work described by the vocational expert may still require the speed and concentration Lubin lacks" and "hypothetical question should have included Lubin's moderate limitations in concentration, persistence, or pace").

A recent district court case concluded that Brink conflicts with published Ninth Circuit authority. Walsh v. Berryhill, No. 16-2084, 2017 WL 7859362 (C.D. Cal. Nov. 29, 2017), held that the ALJ properly translated the plaintiff's moderate difficulties in concentration, persistence, and pace into a limitation to "simple, repetitive tasks." Id. at *5 (citing Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (holding that hypothetical limiting plaintiff to simple, routine, repetitive work captured moderate limitations in ability to perform at consistent pace)). Walsh noted that Brink was unpublished, unlike Stubbs-Danielson, and that the two cases directly conflicted despite Brink's stating the contrary. See Brink, 343 Fed. App'x at *1 (claiming that the medical testimony in Stubbs-Danielson had not established any limitations in concentration, persistence, or pace); but see Stubbs-Danielson, 539 F.3d at 1173 (noting that plaintiff had a "slow pace, both with thinking and her actions" and was "moderately limited" in her ability "to perform at a consistent pace without an unreasonable number and length of rest periods," and holding that ALJ permissibly translated this into a "simple tasks"

limitation).

Furthermore, recent unpublished Ninth Circuit cases have not cited Brink and rely instead on Stubbs-Danielson to find that "simple task" hypotheticals can encompass concentration, persistence, and pace limitations. In Israel v. Astrue, 494 Fed. App'x 794 (9th Cir. 2012), the Ninth Circuit found that an ALJ's RFC limitation to "simple tasks" adequately captured moderate limitations in concentration, persistence, or pace. In Sabin v. Astrue, 337 Fed. App'x 617 (9th Cir. 2009), the Ninth Circuit determined that an ALJ's RFC formulation for "simple and repetitive tasks on a consistent basis" was consistent with the claimant's moderate difficulties in concentration, persistence, or pace, where the plaintiff could complete serial ones, follow a three-step command, and do her own cooking, cleaning, laundry, shopping, and bills. Id. at 621.

Given this recent authority and the records in this case, the Court concludes that the ALJ's hypothetical adequately captured Plaintiff's restrictions related to concentration, persistence, and pace. See Stubbs-Danielson v. Astrue, 539 F.3d at 1174 ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony."). The ALJ noted that at a November 2013 consultative examination with Dr. Aguilar, Plaintiff recalled three out of three objects immediately and two out of three objects after five minutes, performed serial sevens, and could spell "world" forward and backward. See AR 18 (citing AR 474). The ALJ also cited a state agency doctor's conclusion that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace. See id. (citing AR 84). That state agency physician relied on Dr. Aguilar's opinion that Plaintiff's work limitations were "mostly none to mild, with moderate impairment in tolerating stress." See id. (citing AR 475). Dr. Aguilar, in turn,

13

had concluded that Plaintiff's ability to follow simple and detailed instructions was not limited; his ability to interact with the public and coworkers was not limited; his ability to comply with job rules was not limited; his ability to respond to changes was mildly limited; and his ability to respond to work pressure was moderately limited. See AR 475. Given this record, the ALJ's hypothetical posed to the VE—which referenced simple tasks and simple work-related decisions with no inherently stressful jobs such as taking complaints—adequately captured Plaintiff's limitations in concentration, persistence, and pace.

## D.   New Evidence

Plaintiff submitted to the Appeals Council a letter dated February 12, 2016, from Dr. Ali. See AR 879-84. In that letter, Dr. Ali stated vaguely that it was "not recommended" that Plaintiff stay on his medications for a "protracted period of time as they have the potential to cause further medical problems," and there would "be medication changes down the road." AR 879. Dr. Ali also summarized his clinical findings regarding Plaintiff's conditions. See AR 880-84. In denying Plaintiff's request for review, the Appeals Council made the letter part of the record but concluded that the letter did "not provide a basis for changing the [ALJ]'s decision." AR 2.

When "a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1159-60 (9th Cir. 2012). Even taking the letter into consideration, substantial evidence supported the ALJ's decision. As explained above, the ALJ properly discounted those parts of Dr. Ali's opinion that conflicted with the RFC; Dr. Ali's letter simply repeats his diagnostic findings

14

and speculates about Plaintiff's future medical treatment.

## III.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: November 1, 2018

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge